STATE of Minnesota, Respondent,

v.

Thomas WERMERSKIRCHEN,
Appellant.

No. C7–91–1027.

Court of Appeals of Minnesota.

April 14, 1992.

Review Granted June 10, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin Coun-ty Atty., Gary S. McGlennen, Asst. County Atty., Minneapolis, for respondent.

Earl P. Gray, Earl P. Gray & Associates, St. Paul, for appellant.

Considered and decided by SCHUMACHER, P.J., and KALITOWSKI and MULALLY *, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Thomas Wermerskirchen alleges the trial court erred in admitting *Spreigl* evidence and that prosecutorial misconduct denied him a fair trial. We affirm in part, reverse in part and remand for a new trial.

## FACTS

Thomas and Marilyn Wermerskirchen were married in 1979. Marilyn had a 10–year–old daughter, J., by a previous marriage. In 1981, Marilyn gave birth to their daughter, M. (complainant).

Marilyn filed for marriage dissolution in April 1989, and on June 2, obtained a restraining order limiting appellant's contact with the family. On June 20, 1989, Marilyn and appellant attended a court-sponsored mediation hearing at which time J. revealed that she had been sexually abused by appellant. Marilyn contacted the authorities.

The Carver County Sheriff's department began an investigation. A detective interviewed J., then age 20, and arranged for M., then age 8, to see a doctor at a children's resource center but did not personally interview her.

The doctor conducted a videotape interview and medical examination of M. During the interview M. alleged that appellant had inappropriately touched her. The examination did not reveal physical evidence of penetration, but the doctor testified that this is not inconsistent with the touching incidents M. described.

During the dissolution proceedings, M. began seeing a counselor to help her deal

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

with her parents' separation. During a counseling session on January 11, 1990, M. said her father had digitally penetrated her several times and put his hand in her shirt and down her pants. She said the latter act had occurred during an overnight stay at appellant's apartment.

On January 19, 1990 a Carver County detective interviewed M. about the allegations. M. said she was at her father's apartment during the dissolution proceedings when appellant slid his hand down her underwear and rubbed her buttocks and his thumb came near her vagina. This allegedly occurred while the two were lying in bed together. M. also said that on other occasions when she had visited her father's apartment he had touched her chest.

The detective, believing the more serious allegations referred to conduct at appellant's apartment in Hennepin County, turned the case over to the Hennepin County Sheriff's office. A Hennepin County detective interviewed Marilyn on April 3, 1990, and conducted a videotaped interview of M. on April 5. On June 21, 1990, appellant was charged with criminal sexual conduct in the second degree.

M. testified at trial that in the spring of 1989, she had visited her father's apartment three times and stayed overnight twice. Marilyn and appellant testified it was two visits, once overnight. M. described one visit when she and her father were watching television and he put his hand in her underwear. M. described a second visit when appellant stuck his hand down her underwear and his thumb touched her vagina. M. said this occurred when she was in bed with her father because she was scared to sleep alone. M. told the detective that her father had never penetrated her.

Over defense objection, the state also offered, as *Spreigl* evidence, the testimony of J. and of appellant's nieces J.R. and K.S. J., age 21 at time of trial, testified that when she was about 13 years old, appellant had touched her breasts and rubbed his pelvic area against her backside while giving her a backrub.

J.R., age 28 at time of trial, testified that appellant spent many holidays with her family while she was growing up. She stated that at such gatherings appellant would walk up to her, rub the side of her breast, and occasionally look down her shirt to see if she was wearing a bra. She also testified that he would rub her buttocks and make comments that she was sexy or was beginning to develop. She said this behavior began when she was 10 or 11 and continued until she was 19.

K.S., age 23 at the time of trial, testified that when she was under age 13 appellant would greet her at family gatherings and rub her buttocks as he hugged her. She also stated that appellant would make comments to her about her physical development.

Appellant testified that he had never touched any female relative with any sexual or aggressive intent. He said that he had rubbed cream on M. when she was younger to help relieve an irritation she had. He stated that on the night at his apartment, M. had been afraid to sleep alone and asked him to sleep with her. He said he had not touched her inappropriately, but had only given her a hug. He testified that he had given J. backrubs on occasion but not like J. had described. He claimed J. had rebelled against him because he had come between her and Marilyn and because he had tried to discipline her. He denied any inappropriate touching of his nieces.

After deliberating for 12 hours, the jury found appellant guilty of the crime charged, criminal sexual conduct in the second degree, in violation of Minn.Stat. § 609.343, subd. 1(a) (1988). The trial court denied appellant's motion for judgment of acquittal or a new trial. This appeal followed.

## ISSUES

1. Did the trial court abuse its discretion in allowing the *Spreigl* evidence to be received at trial?

2. Were the prosecutor's comments concerning the *Spreigl* evidence, coupled with the trial court's failure to instruct when the

evidence was offered and its inadequate conclusory instruction, sufficient to have denied appellant a fair trial?

## ANALYSIS

### 1. Admission of *Spreigl* Evidence

Evidence of a defendant's prior misconduct is not admissible to prove the character of a person in order to show action in conformity therewith. Minn. R.Evid. 404(b). In other words, the prosecution may not offer evidence of prior acts for the purpose of having the jury infer that the defendant was predisposed to commit the act for which he now stands trial. The trial court has discretion, however, to admit such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R.Evid. 404(b); *see also State v. Spreigl,* 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965). *Spreigl* evidence is admissible only when the following requirements are met:

1. The prosecution notifies the defense that the state intends to introduce the evidence;
2. The prosecution states the evidentiary basis for admission;
3. When the evidence is offered to prove identity, there must be a connection in time, place, or *modus operandi;*
4. The trial court finds that the *Spreigl* evidence is necessary to the state's burden of proof;
5. The evidence of the *Spreigl* conduct is clear and convincing;
6. The trial court gives appropriate instructions as to the limited purpose of the *Spreigl* evidence.

*State v. Hannuksela,* 452 N.W.2d 668, 678 (Minn.1990). The decision whether to admit *Spreigl* evidence ordinarily lies within the discretion of the trial court. *State v. DeWald,* 464 N.W.2d 500, 503 (Minn.1991). The trial court must find that its probative value is not outweighed by its prejudicial effect. *Id.* Where admissibility is questionable, the court must not admit the evidence. *Id.*

We must first examine whether there was a proper evidentiary basis for admission of the *Spreigl* evidence. The trial court decided that the testimony of three of the four proffered *Spreigl* witnesses was relevant to the state's case "because the incidents had a similar modus operandi and demonstrated the requisite intent."

Because the evidence of appellant's prior acts was clear and convincing, necessary for the state to prove appellant had the requisite intent, and was more probative than prejudicial, we conclude that the evidence was admissible to show intent. However, we conclude that it was not admissible to show modus operandi. Modus operandi evidence is relevant to show that a particular individual committed the act charged. When it is clear that a crime in fact occurred, but it is unclear who actually committed that crime, modus operandi evidence is relevant in pinpointing a particular person as the perpetrator.[1]

In this case, there was no reason to demonstrate modus operandi, and the *Spreigl* evidence should not have been admitted for that purpose. When identity is not at issue, evidence purporting to show the accused's "modus operandi" is not only irrelevant, but extremely prejudicial.

Respondent argues the *Spreigl* evidence "clearly illustrated to the jury the *true nature* of *appellant's appetite to molest young female relatives, including his own daughter.*" (Emphasis added.) This phrase brilliantly demonstrates the danger *Spreigl* evidence will be misused by the jury. Respondent contends that the *Spreigl* evidence shows appellant has a certain character, or a proclivity to commit this type of crime, acted in conformity with that character, and committed the offense charged.[2] This is precisely what is prohib-

---

**1.** For instance, if a bank robbery had occurred wherein the perpetrator wore a gorilla mask, evidence that an individual committed prior robberies while wearing a gorilla mask would be relevant in establishing the *identity* of the person responsible for the current crime.

**2.** Respondent basically contends that it was appellant's "modus operandi" to commit the of-

No

ited by the longstanding rule against admitting prior misconduct of an accused. *See* Minn.R.Evid. 404(b). The only proper evidentiary basis for admitting this *Spreigl* evidence was to show intent. Any other basis is violative of Minn.R.Evid. 404(b).

### 2. The Use of the *Spreigl* Evidence at Trial

■ Because of the danger *Spreigl* evidence will be misused by the jury, it is incumbent upon the trial court to carefully monitor the introduction and use of this evidence. The trial court must give appropriate instructions as to the limited purpose for which the *Spreigl* evidence is offered. *Hannuksela*, 452 N.W.2d at 678.

■ To ensure that the jury does not misuse the evidence, the court must give a cautionary instruction both at the time the evidence is received and at the conclusion of the trial. *State v. Billstrom*, 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967); *see also* 10 Minnesota Practice, CRIM. JIG, 2.01. The trial court failed to instruct the jury at all prior to the testimony of the *Spreigl* witnesses. Because of this, there was a danger that by the time the court gave its conclusory instructions, the jury had already misused the evidence.[3]

■ The trial court did instruct the jury on the use of the *Spreigl* evidence at the conclusion of the trial per CRIM. JIG 3.16:

You have heard evidence in this case involving alleged misconduct regarding [the three *Spreigl* witnesses]. This evidence is admitted for the limited purpose of assisting you in determining whether the Defendant committed the crime with

fense charged; therefore, he committed the offense charged. Arguing that it is the accused's "modus operandi" to commit a certain crime is arguing exactly what Rule 404(b) prohibits.

3. Although the trial court erred in not giving the instruction at the time the *Spreigl* evidence was offered, the record does not indicate that appellant requested the limiting instruction. Failure to give the instruction at the time the *Spreigl* evidence was admitted does not, in and of itself, constitute reversible error. *State v. Forsman*, 260 N.W.2d 160, 169 (1977).

which he is charged in the complaint I read to you. The Defendant is not being tried for and may not be convicted of any crime other than the crime charged in the complaint. You're instructed specifically that you are not to convict the Defendant on the basis of any alleged misconduct testified by these witnesses. To do so might result in unjust double punishment.

With this instruction, the trial court alleviated some of the danger the jury would convict the defendant solely because it believed he committed these earlier acts. For the reasons discussed below, however, we believe this instruction was inadequate.[4]

■ First of all, this instruction allowed the jury to use the prior misconduct to decide if the act element of the crime was present when it should only have been used to decide if the mental element was present.[5] When *Spreigl* evidence is determined relevant for certain of the "other purposes" listed under Minn.R.Evid. 404(b)—motive, opportunity, preparation, plan, or identity—this use is proper. With these "other purposes," the *Spreigl* evidence is probative of determining whether a specific individual committed the crime. When the *Spreigl* evidence is admitted based on one of the aforementioned "other purposes" only, the jury can properly use the *Spreigl* evidence to determine "whether the defendant committed the act(s) alleged." With these "other purposes," the *Spreigl* evidence assists the jury in pinpointing the particular perpetrator of a given act. The *Spreigl* evidence, in that context, is probative of whether the accused

4. Because appellant failed to object to the instruction at trial, and has not raised the issue on appeal, this decision is not based on the inadequacies of CRIMJIG 2.01 or 3.16 when dealing with *Spreigl* evidence in this particular context. The discussion of the proper instructions for this circumstance is to clarify the proper course of action on remand.

5. CRIMJIG 3.16 uses the word "crime," not differentiating between the act and intent elements of a given crime. CRIMJIG 2.01, which uses the word "act," is particularly inappropriate when the *Spreigl* evidence is admitted to show intent.

committed the act element of the crime charged.

■■ When the *Spreigl* evidence is admitted for the remaining "other purposes" listed in Minn.R.Evid. 404(b)—intent, knowledge, or absence of mistake or accident—however, the *Spreigl* evidence should *not* be used to determine whether the accused committed the act charged in the complaint. Instead, the *Spreigl* evidence in this context is probative only for purposes of determining whether the accused had the requisite state of mind when he committed the act charged (i.e., separating *actus reus* and *mens rea*).

■■ When *Spreigl* evidence is admitted to show state of mind, the jury must initially determine, without using the *Spreigl* evidence, whether the defendant committed the act charged. If the jury concludes the other evidence establishes beyond a reasonable doubt the defendant committed the act charged, the jury can then use the *Spreigl* evidence to decide if the accused had the requisite state of mind to commit the crime charged.

Allowing the jury to use "state of mind" *Spreigl* evidence to determine whether the defendant committed the offensive act encourages the jury to use the evidence "to prove the character of a person in order to show action in conformity therewith."

This is precisely what Minn.R.Evid. 404(b) prohibits.[6]

In this case, there was no issue as to who committed the alleged offense. The issues were whether the touchings occurred at all and, if so, whether appellant had the "sexual or aggressive intent" under Minn.Stat. § 609.343. The *Spreigl* evidence was relevant only toward proving whether appellant acted intentionally without mistake or accident. Thus, it was incorrect to instruct the jury that it could use the *Spreigl* evidence to determine whether appellant committed the act alleged.[7]

The critical problem with the handling of the *Spreigl* evidence at trial was the prosecutor's open invitations and encouragement for the jury to improperly use the *Spreigl* evidence. The prosecution made improper remarks to the jury in his closing argument. The prosecutor consistently argued that the *Spreigl* evidence could be used to demonstrate much more than whether appellant acted intentionally if he, in fact, touched M. inappropriately.

The prosecutor began his argument with perhaps the most egregious comments:

> Now, he stands accused or stands on trial charged with the incident that happened at his apartment. *But he stands accused of much more.* And you have heard much *more evidence* that has been *introduced to show his conduct. He*

---

**6.** The supreme court's caselaw does not permit using *Spreigl* evidence to show an accused's propensity or capacity to commit a charged offense. *Spreigl*, 272 Minn. at 493, 139 N.W.2d at 171, and *City of St. Paul v. Greene*, 238 Minn. 202, 206, 56 N.W.2d 423, 426 (1952), state that, although evidence of prior offenses generally tend to show an inclination to commit that type of offense, the evidence is not *automatically inadmissible* because of this danger. These cases state that it is when the *sole* or *main* purpose for introducing evidence of prior misconduct is to show a propensity to commit the type of crime charged that the evidence is inadmissible on that ground. This analysis relates to the *Rule 403 analysis*—weighing the inherent prejudicial effect of *Spreigl* evidence against its probative value.

The caselaw does *not* state that it is permissible for the prosecution to ask the jury to use the *Spreigl* conduct as evidence of the accused's predisposition to commit the offense charged, nor do the cases state that the trial court may instruct the jury it may use the *Spreigl* evidence

this way. *But see State v. Haala*, 415 N.W.2d 69, 77 (Minn.App.1987), *pet. for rev. denied* (Minn. Dec. 22, 1987) (interpreting *Spreigl* and *Greene* to allow the misuse of *Spreigl* evidence if the misuse is not the only use). The supreme court caselaw discussing *admissibility* do not bear on the issue of the proper *use* of *Spreigl* evidence at trial. Using *Spreigl* evidence to prove a predisposition to commit a certain type of offense and asking the jury to infer that the accused acted in accordance with that predisposition is patently improper and prohibited by Minn.R.Evid. 404(b) and the controlling caselaw.

**7.** CRIMJIG 2.01 and 3.16, however, do not distinguish between the identifying "other purposes" under Minn.R.Evid. 404(b) and the state of mind "other purposes." On retrial, the trial court should instruct the jury that it may use the *Spreigl* evidence to determine the intent issue only. This instruction should be given at trial (when the evidence is offered) and at the conclusion of trial.

*stands accused of doing this same kind of thing to numerous other victims during the past 15 or so years. And that evidence is relevant to show that he did what he is accused of doing to [M.] * * *. You can consider the evidence for that purpose. * * * We're not here because of the one time. We're here because of misconduct over a long time period.*

(Emphasis added.) Defense counsel objected, asked that the last statement be stricken, and the trial court sustained the objection and complied with that request.

The prosecutor's comment is patently improper and encouraged the jury to misuse the *Spreigl* evidence—convict appellant because he's a "bad guy."

The prosecutor also argued to the jury that it could use the *Spreigl* testimony to bolster M.'s credibility and attack appellant's credibility:

That's the kind of stuff [M.] is talking about. That's the kind of stuff [K.S.] * * * is talking about. The same kind of conduct that [J.R.] * * * talked about. * * * This shows [M.]'s credibility. * * * Is [J.R.] * * * believable? You decide. Is what she says credible? Is what she says consistent with what [M.] says and what [J.] says?

Defense counsel objected and asked that the jury be instructed to disregard "this argument about examining the credibility." The objection was sustained and the instruction given.

█ It was improper for the prosecutor to tell the jury to use the *Spreigl* evidence to assist it in determining the credibility of the complainant and appellant. Bolstering credibility, corroboration, or the like is not mentioned as an "other purpose" in Minn. R.Evid. 404(b). Additionally, if *Spreigl* evidence could be used as evidence of a complainant's credibility, it would be admissible in virtually every case for this purpose. This would basically eliminate the general prohibition against admitting prior un-

charged misconduct of an accused. Finally, the supreme court has implied that *Spreigl* evidence should not be used to determine credibility:

Defendant's * * * contention, relating to the trial court's instructing the jury that it could consider the *Spreigl* evidence in assessing the credibility of defendant's testimony, must be deemed forfeited, since defense counsel did not object.

*State v. Garretson,* 293 N.W.2d 44, 45 (Minn.1980). Clearly this use is improper, and the prosecutor should not have asked the jury to use the *Spreigl* evidence to assess credibility.

█ If the prosecution makes improper argument, the reviewing court must decide whether that misconduct is serious enough to warrant reversal. The decision should be reversed only when the misconduct, when viewed along with the record as a whole, appears so prejudicial that defendant was not given a fair trial. *State v. Wahlberg,* 296 N.W.2d 408, 420 (Minn. 1980).

In this case, the jury was grappling with the already difficult *Spreigl* evidence. When the prosecution encouraged the jury to misuse the *Spreigl* evidence, and the trial court failed to instruct the jury when the evidence was offered and offered an inadequate instruction before the jury retired to deliberate, the probability that appellant was denied a fair trial is undeniable.[8] *Spreigl* evidence is too dangerous, in and of itself, to allow it to be mishandled at trial.

## CONCLUSION

The trial court did not abuse its discretion in admitting the *Spreigl* evidence. The state's alternative evidence to establish intent was weak. Additionally, the trial court conducted a careful review of the proffered testimonies to determine if the state could show the reliability of these testimonies clearly and convincingly. It was proper to admit the *Spreigl* evidence

8. Although appellant, by failing to object at trial, waived his right to address the adequacy of the trial court's instruction and the failure to instruct as independent grounds for reversal, these problems must nonetheless be considered when reviewing the record *as a whole* to determine whether the prosecutorial misconduct denied appellant a fair trial.

to demonstrate the requisite intent or state of mind.

■ Because of the inherent danger that a jury will misuse *Spreigl* evidence, the trial court must be careful to instruct the jury at the time the evidence is offered and at the conclusion of trial as to its specific limited purpose. Furthermore, any improper comment the state makes which increases the danger that the jury will misuse the *Spreigl* evidence must be given particular scrutiny upon appeal.

In this case, the *Spreigl* evidence was relevant only toward proving intent. The jury should have been instructed that it could use the evidence only for that purpose. In other words, the jury should have been told that the crime can be separated into two elements—the act and the state of mind. If the jury found that appellant committed the touchings without considering the *Spreigl* evidence, it could then, and only then, consider the *Spreigl* evidence to determine whether appellant also had the requisite state of mind.

In this case, the state openly encouraged the jury to misuse the *Spreigl* evidence. The trial court did not sufficiently insure that this volatile evidence was used properly. Because of this, appellant was denied a fair trial. Accordingly, the conviction is reversed and a new trial ordered.

### DECISION

Affirmed in part, reversed in part and remanded.