STATE of Minnesota, Petitioner,
Appellant,

v.

Thomas WERMERSKIRCHEN,
Respondent.

No. C7–91–1027.

Supreme Court of Minnesota.

March 12, 1993.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Gary S. McGlennen, Asst. County Atty., Minneapolis, for appellant.

Earl P. Gray, St. Paul, for respondent.

Robert A. Stanich, Sp. Asst. Atty. Gen., and Gina Grace, Washburn, St. Paul, for amicus curiae, MN County Attys. Ass'n.

COYNE, Justice.

The court of appeals granted the defendant, Thomas Wermerskirchen, a new trial on a charge he sexually touched his 9-year-old daughter and thereby committed criminal sexual conduct in the second degree, Minn.Stat. § 609.343, subd. 1(a) (1990).[1] The court of appeals ruled (1) that *Spreigl* or other-crime evidence was properly admitted pursuant to Minn.R.Evid. 404(b) to prove that any touching was intentional but was not properly admitted to prove that any touching occurred and (2) as a result of the prosecutor's statements in closing argument and the trial court's instructions on the use of the other-crime evidence, the jury may have misused the evidence to decide that touching occurred. *State v. Wermerskirchen*, 483 N.W.2d 725 (Minn.App.1992). In ruling that the other-crime evidence could not be used to prove any touching occurred, the court of appeals ignored long-settled case law upholding the use of other-crime evidence to prove the corpus delicti, that is, to prove the doing of the act charged. Because we are satisfied both that the evidence was properly admitted to prove the doing of the act charged and that the jury did not misuse the evidence, we reverse the decision of the court of appeals and reinstate the judgment of conviction.

Complainant, M.W., born in 1981, is the only child born to defendant and Marilyn, his former wife. The marriage was the second marriage for both, and Marilyn brought to the marriage a daughter from her first marriage, J.L., who was born in 1969. The second marriage deteriorated, and in March of 1989 defendant moved into an apartment that J.L. had been renting and J.L. moved back to her mother's home. Marilyn filed for divorce about a month later. Shortly before a June 1989 mediation session Marilyn asked J.L. if defendant had ever sexually abused her. J.L. said defendant had but would not give details.

J.L. subsequently told her story to authorities in Carver County, where the abuse had occurred, beginning in 1981 when she was 12 years old. (Carver County declined to prosecute, apparently because so much time had passed since the abuse occurred.)

The detective who talked with J.L. arranged for M.W. to see Dr. Carolyn Levitt. Dr. Levitt conducted a video-taped interview of M.W., then turned off the camera and physically examined the child. Although the interview took place shortly after the occurrence of the abuse of M.W. on which defendant's conviction is based, M.W. did not tell Dr. Levitt about the abuse. She did, however, describe sexually inappropriate conduct by defendant, including an incident where defendant had told her to touch his penis, and she made it clear that she had had a hard time setting "boundaries" with defendant (getting him to allow her privacy in the bathroom, etc.). The transcript of the interview indicates that defendant had sexually abused M.W., and in her testimony at trial Dr. Levitt admitted as much; however, at the time, Dr. Levitt did not decide that sexual abuse had occurred. Her report at that time used the word "inconclusive."

Meanwhile, Marilyn obtained a restraining order, putting an end to M.W.'s visits with defendant in the apartment. In January of 1990, after this order had been in effect for 6 months, M.W. finally told her therapist or counselor, Susan Winslow (whom M.W. was seeing to help her get through the divorce process), about the events forming the basis of the charges against defendant. Winslow put in her notes on that day and later testified that M.W. said defendant had put his finger into

---

1. Minn.Stat. § 609.343, subd. 1(a) provides as follows:

Subdivision 1. **Crime defined.** A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if any of the following circumstances exists:

(a) the complainant is under 13 years of age and the actor is more than 36 months older than the complainant. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense. In a prosecution under this clause, the state is not required to prove that the sexual contact was coerced.

her vagina on several different occasions. Winslow reported this, and prosecution subsequently was begun in Hennepin County, where the abuse occurred.

In her statements to police and in her testimony, M.W. did not say that penetration had occurred. Rather, she said defendant had touched her in the vaginal area. Accordingly, the prosecution was not for sexual penetration but for sexual touching.

Of course, M.W.'s testimony was limited to the acts alleged but included reference to her relationship with her father when she was younger. Specifically, she testified that when she was younger she had a recurring problem of vaginal irritation (causing her doctor to question whether someone was touching her inappropriately) and that defendant applied petroleum jelly to her vagina each night, rubbing harder than her mother did when her mother applied the jelly; that defendant took showers with her until she was 6 years old; that defendant continued to be in the bathroom when she was bathing (her mother testified that defendant "insisted" on it); that as defendant followed her upstairs when she went up to go to bed, defendant would pat her on her breasts from behind and touch her "lower privates"; and that on occasion she had seen defendant pull her underwear from her laundry basket in her room and smell it.

Recounting the conduct on which the prosecution was based, she testified that she visited defendant at the apartment three times, staying overnight on two of the three occasions, and that defendant had sexually touched her on two occasions. She admitted that she was afraid sleeping alone the first night and had asked defendant to sleep with her. She testified that while in bed with her, defendant stuck his hand inside her underpants and started to move it around to the front, touching close to her vagina, before she kicked him and made him stop. She testified that the second time, while they were watching a movie on the couch, defendant put his hand inside her jeans, but not inside her underpants, and touched her buttocks before she asked him to remove his hand.

The admissibility of the *Spreigl* or other-crime evidence was addressed by the trial court at the omnibus hearing. The state wanted to call J.L. and three other young women to testify at trial concerning similar misconduct by defendant. The trial court excluded the testimony of one of these women, K.L.T., but admitted the testimony of the others.

The first *Spreigl* witness was J.L., M.W.'s half-sister and defendant's stepdaughter, age 21 at the time of trial. She testified that starting when she was 12 years old defendant started teasing her about her bust and started touching her on her breasts and buttocks. When she told him to stop calling her a "slut" and a "whore," he told her he was "just joking." When she reacted to his teasing and touching, he would say she was overreacting. She said that when she was 13 and asked her mother for a neck rub for neck spasms she was having, defendant said he would do it. She testified that he then sat on her buttocks as she was lying on the floor, reached inside her shirt and rubbed, moving his hands under her to her breast area. She testified that his penis became hard and he rubbed it up and down against her rear end, breathing heavily as he did so. She also corroborated much of M.W.'s testimony about the sexually abusive conduct leading up to the conduct on which the prosecution was based.

The two other *Spreigl* witnesses were two of defendant's nieces, daughters of defendant's sister. C.S., age 32, testified that when she was 13 and defendant was around 25, defendant would come up to her at family gatherings and check to see if she had a bra strap, would rub her on the buttocks, and would groan and move his hips. J.R., age 28, testified similarly, saying that from when she was 10 or 11 until she was 19, defendant, who was 16 years older, would look down her shirt and comment on her development, would rub her breasts and touch her on the buttocks, would comment on how sexy she was, and would make sexual grunting sounds

around her. She testified that when she was 15 he walked in on her when she was in the bathtub and instead of leaving as requested, stood and combed his hair and looked at her in the mirror and said, "It's not like something I haven't seen before."

Defendant called character witnesses. His current girl friend, a school counselor who was living with defendant, testified that she was the "designated reporter" at her school and that she had no hesitation leaving her young daughters in defendant's care. Defendant also testified, denying that any of the charged touching occurred, and said that if it occurred it was "at most" an accidental brushing against the breasts. He also denied that the *Spreigl* misconduct occurred.

In closing argument the prosecutor appropriately made it clear that the only conduct underlying the charge against defendant was the sexual touching of M.W. in May and June of 1989 at the apartment. The prosecutor then said that while defendant was "on trial" only for that conduct, he stood accused of more, referring to the other-crime evidence. The prosecutor argued that this evidence showed that defendant had been doing this sort of thing for more than 15 years and that it was relevant "to show that he did what he is accused of doing to [M.W.]" and that "it shows us what his sexual intent was in the day in question, whether he in fact committed a crime." Defendant's counsel did not object to this but did object when the prosecutor said, "We're not here because of one time. We're here because of misconduct over a long period of time." The trial court sustained the objection and immediately directed the jury to disregard this statement. The prosecutor then corrected himself, saying he thought he had made it clear that the charge was that defendant engaged in misconduct with M.W. in May and June of 1989.

Later when discussing the testimony of the nieces, the prosecutor compared the bathroom incident testified to by J.R. with the testimony by M.W. about trying to keep defendant out of the bathroom when she was bathing. The prosecutor said that this evidence showed M.W.'s credibility. Defense counsel did not object at first but did object when the prosecutor continued along this line by asking "Is what [J.R.] says consistent with what [M.W.] says and what [J.L.] says?" The trial court sustained the objection and instructed the jury to disregard the argument as relating to the credibility of witnesses.

Defense counsel again objected at one point when the prosecutor said that defendant was not charged with penetration, only with touching, but if defendant in fact penetrated the victim (as Winslow's testimony indicated M.W. had said), defendant was equally guilty of the charge of sexual contact (because sexual penetration is a form of contact). The trial court also sustained a defense objection to this.

Finally, when the prosecutor made a statement to the effect that M.W. did not enjoy testifying, defense counsel objected that the argument was an improper argument going to sympathy and the trial court sustained the objection.

Defense counsel in his closing argument told the jury that the other-crime evidence was presented in order to "muddy the waters" and told the jury that it could not consider the other-crime evidence until it first decided that defendant "did this."

There is no record of defense counsel seeking a cautionary instruction when the other-crime evidence was admitted. Defense counsel did, however, request the following modified version of the CRIMJIG final instruction on other-crime evidence:

> You have heard evidence in this case involving alleged misconduct regarding [J.L., J.R., and C.S.]. This evidence is offered only for a limited purpose of showing the defendant's intent at the time of the offense alleged in this case. It is not admitted to show that he committed the alleged act itself. You are instructed specifically that you are not to convict the defendant solely on the basis of the above-mentioned occurrences regarding the above-mentioned witnesses. To do so is unjust.

Instead, the trial court gave an instruction modeled after CRIMJIG 3.16, stating:

You have heard evidence in this case involving alleged misconduct regarding [J.L., J.R. and C.S.]. This evidence is admitted for the limited purpose of assisting you in determining whether the Defendant committed the crime with which he is charged in the complaint I read to you. The Defendant is not being tried for and may not be convicted of any crime other than the crime charged in the complaint. You're instructed specifically that you are not to convict the Defendant on the basis of any alleged misconduct testified by these witnesses. To do so might result in unjust double punishment.

After he was convicted, defendant moved for a new trial based primarily on the prosecutor's statements in closing argument as to the proper use of the *Spreigl* evidence. In denying this motion, the trial court stated:

Although the prosecutor's closing argument could have been more carefully articulated, as a whole, the *Spreigl* evidence went to the intent and common scheme or plan. The Court does not find that there is prosecutorial misconduct which influenced the jury's finding of guilt.

The trial court then proceeded to sentence defendant to a stayed term of 21 months in prison; defendant was required to serve probationary jail time, with eligibility for *Huber* release, and with early release for treatment a possibility as well.

On appeal defendant did not take issue with the adequacy of the cautionary instruction, but he did argue that the trial court erred in admitting the *Spreigl* evidence and that the prosecutor committed prejudicial error in closing argument.

■ 1. The starting point of the court of appeals' opinion is its acceptance of the statement that the other-crime evidence was admitted under Rule 404(b) to prove "intent" and "modus operandi." The court of appeals said that while it was proper to admit the evidence to establish intent (*i.e.,* to show that any touching was nonaccidental or nonsexual in intent), it was not proper to admit it to show modus operandi, be-cause other-crime evidence is admissible to show modus operandi only where identification is at issue. From this, the court of appeals concluded that it was improper for the prosecutor to argue as he did in closing argument. The opinion then suggests that the trial court could have cured the error if it had instructed the jury precisely on the proper purpose for which the evidence was admitted, and, in effect it announces a new rule: that CRIMJIG 3.16 is erroneous and that in the future the trial court should fashion an instruction precisely limiting the purpose for which the evidence is admitted.

Minn.R.Evid. 404(b) provides:

Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In a criminal prosecution, such evidence shall not be admitted unless the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence. * * *

As we stated recently in *State v. Frisinger,* 484 N.W.2d 27, 32 (Minn.1992):

The trial court initially should follow the clear wording of Rule 404(b) and look to the real purpose for which the evidence is offered. Under the rule, other-crime evidence is not admissible to prove the character of a person in order to show that the person acted in conformity therewith; but the evidence may be admitted, if for a legitimate purpose, rather than for the forbidden purpose of inferring propensity from character. If the evidence is offered for a legitimate purpose, then the exclusion sanction of Rule 404(b) does not apply.

The rule is a specific application of the "rule of multiple admissibility"—evidence that is inadmissible for one purpose (inference from intermediate inference of bad character to inference that defendant acted in conformity therewith) should not be excluded if it is properly admissible for some other purpose (unless the trial court, in the

exercise of discretion under Rule 403, decides to exclude the evidence).

In deciding the relevance of proposed other-crime evidence offered pursuant to Rule 404(b), the preferred approach is for the trial court to focus on the closeness of the relationship between the other crimes and the charged crimes in terms of time, place and modus operandi. *State v. Filippi*, 335 N.W.2d 739, 743 (Minn.1983). The reason for this is that the closer the relationship, the greater is the relevance or probative value of the evidence and the lesser is the likelihood that the evidence will be used for an improper purpose.

*State v. Frisinger*, 484 N.W.2d at 31.

The mistake the court of appeals' opinion makes is confusing the trial court's reference to similar modus operandi in its relevance analysis with that line of cases which readily upholds the admission of evidence of so-called "signature" crimes by the defendant to prove identity. As the trial court's statement in denying the motion for a new trial makes clear, the trial court did not admit the evidence to show identity; rather, the trial court admitted the evidence to show "intent" and "common scheme or plan."

It is undoubtedly true that some academic commentators would like the "common scheme or plan" doctrine to be one with a quite narrow application. These commentators also would like to limit other-crime evidence so that it may not be admitted to show the corpus delicti, to prove the doing of the act charged. Whatever the possible *general* merits of these arguments or their possible persuasiveness in some contexts, it is clear that in the specific context of rape and sex abuse prosecutions, particularly child sex abuse prosecutions, we have rejected the argument propounded by these academic commentators.

The modern decisions have tended to follow Professor Wigmore's view of admissibility of evidence of other sex crimes to

prove common scheme or plan and to thereby prove "the very doing of the act charged." 2 J. Wigmore, *Wigmore on Evidence* § 304 (Chadbourn Rev.1979). Professor Wigmore put it as follows:

The committing of a single previous rape, or rape attempt, upon another woman may not in itself indicate * * * a design * * *.

Nevertheless, a single previous act, even upon another woman, *may*, with other circumstances, give strong indication of a design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design.

Courts have shown altogether too much hesitation in receiving such evidence. Even when rigorously excluded from any bearing it may have upon character, it may carry with it great significance as to a specific design or plan of rape. There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, a clear indication of such a design.

*Id.* at section 357.

Professor Wright, while generally opposed to the admission of other-crime evidence to prove corpus delicti because he feels the danger is greater that the forbidden inference of propensity from character will be made, concedes that courts "will admit other crime evidence to prove the doing of the charged act where the evidence is highly probative or the need for such proof is unusually great" and he gives as "a good example" of this the use of the evidence in the prosecution of sex offenses. He adds this comment regarding the use of such evidence in cases of sexual abuse of children:

In a case of child molesting, for example, the identification of the culprit and the intent with which he acted are usually less troublesome than proving that the act was committed.[2] Given the secrecy

---

**2.** In a footnote at this point, Professor Wright states:

The intent of the defendant is usually readily inferable from the doing of the act—once one is convinced that the act took place. In more

in which such acts take place, the vulnerability of the victims, the absence of physical proof of the crime, the degree of public opprobrium associated with the accusation, the unwillingness of some victims to testify, and a general lack of confidence in the ability of the jury to assess the credibility of child witnesses, courts are understandably desperate for some evidence beyond the victim's accusation that will prove that the accused did the acts of which he stands charged. 22 C. Wright and K. Graham, *Federal Practice & Procedure—Evidence* § 5239 at 461–62 (1978).

As we indicated earlier, our cases do not preclude the use of other-crime evidence to establish common scheme or plan, *i.e.,* to establish that the act occurred. The *Spreigl* case itself was an indecent liberties case involving the use of evidence of similar acts by the defendant against relatives of the victim. When ruling that a new trial was required because no notice was given (the origin of the so-called *Spreigl* notice), we said that the similarity of behavior was sufficient to justify receiving the evidence at the new trial under the common scheme or plan doctrine. *State v. Spreigl,* 272 Minn. 488, 492–93, 139 N.W.2d 167, 170 (1965), relying upon *State v. DePauw,* 246 Minn. 91, 74 N.W.2d 297 (1955), and *State v. Arradondo,* 260 Minn. 512, 110 N.W.2d 469 (1961).

This court (and the court of appeals, for that matter) have repeatedly upheld admission of other-crime evidence in cases like this, including on the issue of whether the act occurred. Thus, in *State v. Shuffler,* 254 N.W.2d 75, 76 (Minn.1977), an indecent liberties case, the key issue was not identification but whether defendant had approached a woman on the street, untied her halter top and fondled her breasts, as she testified (*Shuffler* transcript 29), or whether he simply tapped her on the shoulder and said "Hi," as defendant testified. (*Id.*

at 120). The trial court admitted evidence, pursuant to the common scheme or plan doctrine, that a month earlier the defendant had followed a woman into a bathroom at the Lowry Medical Building and fondled her breasts and thigh. (*Id.* at 15–19). Upholding the admission of the evidence, we said, in a brief opinion, "[T]his evidence was directly relevant to the jury's resolution of the key factual issue, which was whether defendant had taken indecent liberties with the victim, as she testified, or whether he had merely tapped her on the shoulder and said hello, as defendant testified." *Shuffler* at 76.

Another such case was *State v. Anderson,* 275 N.W.2d 554 (Minn.1978), a criminal sexual conduct case based on evidence that defendant sexually abused his 14–year–old stepdaughter. Defendant claimed that no abuse occurred, that the conduct alleged was a fabrication, the product of the girl's imagination. The trial court admitted, solely for the purpose of showing common scheme or plan, evidence of prior sexual abuse of the victim's half-sister a number of years earlier when she was an adolescent. We upheld the admission of the evidence on this theory, as well as the admission of evidence of prior sexual acts against the complainant to show defendant's relationship with the complainant.

Most of the recent cases in this area have been cases decided by the court of appeals. Examples of these cases, which we cite only for illustrative purposes and not because we necessarily agree with everything said therein, include *State v. Cichon,* 458 N.W.2d 730 (Minn.App.1990), *pet. for rev. denied* (Minn.1990); *State v. McCoy,* 400 N.W.2d 807 (Minn.App.1987), *pet. for rev. denied* (Minn.1987).

In all these cases, the other-crime evidence was not offered for the improper purpose of showing the defendant was a bad person in order to raise an inference

cases than the public stereotype would suggest, the offender is well known to the child and the issue of identification rests on the same assumptions of credibility involved in proof of the act. Where the accused is in fact the fabled stranger offering candy outside schoolyards, his associa-

tion with the child is itself a reason for believing the act took place and such conduct can often be proved without relying on the testimony of the accused. Of course, where identification is the issue, the admissibility of other crimes evidence can be justified on that ground.

that he acted in conformity with his bad character or to persuade the jury to convict on some improper basis but rather because it was highly relevant to the specific issue of whether the conduct on which the charge was based actually occurred or was, as the defendants contended, a fabrication or a mistake in perception by the victim.

Admission for this purpose in a case such as this should be proper at least where the corpus delicti truly is in issue and where the trial court is satisfied that the other crime is sufficiently relevant to the charged crime. Here corpus delicti was in issue because defendant denied that any sexual conduct occurred. The evidence was highly relevant in that it showed an ongoing pattern of opportunistic fondling of young girls within the family context and, therefore, tended to disprove the defense that M.W. was fabricating or imagining the occurrence of sexual contact.[3] In short, to use Wigmore's phrase, the evidence "convey[ed] to the mind, according to the ordinary logical instincts, a clear indication of * * * a design" or a pattern of behavior involving the opportunistic sexual exploitation of young girls within the family context. Or, to paraphrase this court's recent opinion in *State v. Berry*, 484 N.W.2d 14, 17 (Minn.1992), the evidence served to complete the picture of defendant, to put his current conduct in its proper and relevant context, not to paint anoth-

---

**3.** Defendant complains about the lack of closeness in time between the charged offense and the other crimes. We have never held that there must be a close temporal relationship between the charged offense and the other crime. In *State v. Filippi*, 335 N.W.2d 739, 743 (Minn. 1983), we said, "In determining relevancy, we have generally required that the other crime be similar in some way—either in time, location, *or* modus operandi—to the charged offense, although *'this' of course, is not an absolute necessity.*" (Emphasis added). Often the passage of time, while superficially significant, turns out to be without real significance. Thus, *e.g.*, the passage of a number of years may be without real significance if it turns out that the defendant was in prison in the interval between the prior offense and the current offense and was incapacitated from committing crime. *See State v. Filippi*, 335 N.W.2d 739, 743–44 (Minn. 1983), and cases cited therein. Also, the passage of a number of years may be without real significance if the older offense is part of a "pattern" of similar misconduct occurring over a number of years. *State v. Anderson*, 275 N.W.2d 554 (Minn.1978). An illustrative case is *State v. Crocker*, 409 N.W.2d 840 (Minn.1987), where, in the prosecution of the defendant for raping a college student, we upheld the admission of evidence that 9 years earlier, in 1977, the defendant had sexually assaulted a 7–year–old girl. We said:

> The fact that defendant committed a sex offense in 1977, was in prison for most of the next 9 years, and then in 1986 committed two sex offenses before the current offense shows a relevant pattern of sexually assaultive conduct. The fact that the 1977 offense involved the sexual assault of a 7–year–old girl rather than a woman or a sexually mature young woman should not necessarily make a difference. * * * The 1977 offense in question involved the opportunistic sexual assault of a vulnerable 7–year–old girl during a brief period of time when defendant was alone with

her. The January 1986 offense involved the opportunistic attempt to assault a vulnerable 15–year–old stepdaughter sexually during a brief period of time when the girl's mother went to the grocery store on a quick errand. The assault on [a friend of the complainant shortly before the defendant raped the complainant] was a similar opportunistic assault on a young woman who was in a temporarily vulnerable position. The charged offense occurred under similar circumstances.

409 N.W.2d at 843. *See also State v. Rainer*, 411 N.W.2d 490 (Minn.1987), where we upheld the admission of evidence of 16 to 19–year–old incidents which showed a repeating pattern of very similar conduct. The ultimate issue is not the temporal relationship but relevance. "Older" offenses sometimes are relevant, sometimes not. Relevance generally must be determined by the trial court, with review limited to whether the trial court abused its discretion.

The other crimes here occurred between 1970 and 1982, whereas the current offense occurred in 1989. The trial court concluded that this time lapse did not require exclusion because, as the trial court put it, "The other *Spreigl* factors allow for the admission of this evidence." Specifically, the trial court said:

> In each case the incidents have a similar modus operandi on the part of the Defendant, *i.e.*, rubbing buttocks and touching breasts. The incidents also have a similarity in location, *i.e.*, in or at the home of the alleged victim. The incidents involved * * * inappropriate sexual contact with young female relatives of the ages of 10 to 13 years of age, and the victims were all pre-adolescents at some point in the alleged encounters.

> The victim in this case was also a pre-adolescent being approximately 8 years and 3 months old at the time of the alleged incidents in April, 1989. The type of conduct, the location of the conduct and the youth of the victims is similar to the crime charged. Further, the sexual intent of the incidents is clear.

er picture or lead the jury to convict on the basis of an irrelevancy.

■ 2. From this it follows that the prosecutor was justified in arguing the other-crime evidence was relevant both to show that defendant did what he was accused of doing and to show his intent. In any event, defense counsel did not object to this statement. Although it is true the prosecutor poorly phrased his statement that "we're here because of misconduct occurring over a long period of time," any error in that was nonprejudicial because the trial court promptly ordered the statement stricken. Further, the prosecutor made it clear both before and after the statement that the only issue was whether defendant was guilty of sexually touching M.W. in May and June of 1989.

Although it is arguable the prosecutor should be permitted to argue that the other-crime evidence bears on credibility (even if the evidence would not have been admissible solely on that basis),[4] here the trial court sustained the objection to the prosecutor's attempt to so use the evidence and ordered the jury to disregard the argument as to credibility, thereby curing any possible error. (For that reason, we need not decide whether the prosecutor's argument was improper.)

■ The prosecutor's argument that if defendant in fact penetrated the victim, defendant was equally guilty of sexual contact (because sexual penetration is a form of sexual contact) was not improper because there was some evidence that the victim had claimed digital penetration had occurred. In any event, defendant prevailed on this issue in the trial court since the trial court sustained the objection of defense counsel.

The trial court acted properly and effectively to prevent the prosecutor from making any appeal to the jury's sympathy.

In summary, this is a case where the trial court did what trial courts are sup-

posed to do and we think that the trial court cured any possible error.

3. Defendant did not raise the issue of the adequacy of the cautionary instruction on other-crime evidence in the court of appeals. Under our analysis, moreover, there was no need for the court of appeals to address the issue even apart from the fact that defendant did not raise the issue there. Accordingly, we decline to address adequacy of the instruction modeled on CRIMJIG 3.16.

In conclusion, we believe that the trial court did not abuse its discretion in admitting the other-crime evidence for the purpose of proving that the sexual touching occurred, as well as for the purpose of proving that the touching was intentional, and the record on appeal fails to support the contention that, because of the prosecutor's closing argument and the trial court's instructions, the jury may have used the other-crime evidence for an improper purpose.

Reversed and judgment of conviction reinstated.

PAGE, J., took no part in the consideration or decision of this case.

---

4. *U.S. v. Brown,* 547 F.2d 438 (8th Cir.1977), *cert. denied, sub nom., Hendrix v. U.S.,* 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977).