*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0512**


State of Minnesota,
Respondent,

vs.

Leslie Lindsey Treadwell,
Appellant.


**Filed June 8, 2015
Affirmed
Halbrooks, Judge**


Olmsted County District Court
File No. 55-CR-13-1162

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, George H. Norris, Special Assistant Public Defender, Minneapolis, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

On appeal from his conviction of first-degree aggravated robbery after a court trial, appellant argues that the district court abused its discretion by (1) admitting evidence of his second-degree murder conviction to rebut his self-defense and fabrication claims; (2) withholding some of the records reviewed by the district court under the procedure established in *State v. Paradee*; and (3) denying his motion for a new trial based on the posttrial identification of a known eyewitness.  We affirm.

**FACTS**

On February 18, 2013, while appellant Leslie Treadwell was driving his acquaintance, E.W., to an appointment, the two got into a physical altercation.  The parties dispute what prompted the altercation, whether E.W. attacked Treadwell before he grabbed her around the neck, whether he pointed a knife at her, and what happened after Treadwell parked the car in his driveway.

Treadwell testified that "out of the sky blue," E.W. grabbed the steering wheel, causing the car to swerve and "tilt[] on two wheels," reached across the stick-shift column, stepped on the accelerator, and tried to bite his face.  Treadwell acknowledges that he grabbed E.W. by the neck but contends that he did so in self-defense.  When Treadwell parked the car in his driveway, E.W. ran toward a nearby vehicle in which Treadwell's neighbor, "Snoop," and others were seated.  Treadwell testified that because he feared for his safety, he retrieved a knife from the trunk, and E.W. became hysterical.

In contrast, E.W. testified that while they were driving, she casually mentioned the word "police," and Treadwell grabbed her phone, choked her, and pulled out a knife, pointing it at her throat and stomach. When Treadwell parked the car, E.W. demanded that Treadwell return her phone, and he chased her with the knife, which "looked like a steak knife" but was "[a] lot bigger." E.W. ran to a parked car in which Treadwell's neighbor and others were seated, and then flagged down a passing motorist and called 911. Treadwell ran into his home.

Responding police officers spoke with E.W. and Treadwell, photographed E.W.'s neck injuries, and took multiple recorded statements from her. Treadwell gave varying accounts of the whereabouts of E.W.'s phone, including that he did not have it. But after officers dialed E.W.'s cell number and heard the phone ringing, Treadwell retrieved it from the zipped bag of his vacuum cleaner. Treadwell also initially denied that he had a knife but then acknowledged that he kept a butter knife in the trunk of his car for protection. Officers later executed a search warrant and discovered a filet-style knife in the zipped bag of Treadwell's vacuum cleaner, where E.W.'s phone had been found.

The state charged Treadwell with first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1 (2012), second-degree assault in violation of Minn. Stat. § 609.222, subd. 1 (2012), and terroristic threats in violation of Minn. Stat. § 609.713, subd. 1 (2012). Treadwell filed a *Paradee* motion, asking the district court for an in camera review of E.W.'s mental-health records, arguing that if the records showed that E.W. had experienced short-term memory loss or sudden fits of unprovoked violence, this information would be material and favorable to his defense.

3

The district court granted Treadwell's motion and, after finding no indication of "unprovoked rage or aggression and/or short term memory loss or brief periods of blackout," declined to release any records. Treadwell later requested an in camera review of records related to a 2012 emergency room visit, which the district court also granted. Finding that a subset of these records was "arguably relevant," the district court released excerpts of the emergency-room notes.

Before trial, the district court ruled that the state could introduce *Spreigl* evidence that Treadwell had stabbed a friend to death in 2001. The case proceeded to a two-day court trial, and at the close of the state's case, the prosecutor introduced the parties' stipulation to the facts underlying the 2001 murder. Treadwell exercised his right to testify and called three other witnesses.

Immediately following closing arguments, the district court found Treadwell guilty as charged. At sentencing, Treadwell's counsel notified the district court that he intended to file a motion for a new trial based on newly discovered evidence, and the district court continued the hearing. At the next hearing, the district court denied the new-trial motion, convicted Treadwell of first-degree aggravated robbery, and sentenced him to 93 months in prison. Treadwell now appeals his conviction.

## D E C I S I O N

### I.

Treadwell argues that the district court abused its discretion by admitting *Spreigl* evidence of his second-degree murder conviction. The state contends that the evidence

4

was properly admitted to prove identity and modus operandi for purposes of rebutting Treadwell's claims of self-defense and victim fabrication.

Evidence of other crimes or bad acts is characterized as "*Spreigl* evidence" after the supreme court's decision in *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). The admissibility of "*Spreigl* evidence lies within the sound discretion of the [district] court" and "will not be reversed absent a clear abuse of discretion." *State v. Spaeth*, 552 N.W.2d 187, 193 (Minn. 1996). If the district court erred in admitting evidence, the reviewing court determines "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Post*, 512 N.W.2d 99, 102 n.2 (Minn. 1994).

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But rule 404(b) permits the introduction of such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* *Spreigl* evidence may also be admitted to show the conduct on which the charge was based actually occurred or to refute arguments that it was "a fabrication or a mistake in perception by the victim." *State v. Wermerskirchen*, 497 N.W.2d 235, 242 (Minn. 1993).

Minnesota courts apply a five-factor test in determining the admissibility of *Spreigl* evidence:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the

5

state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*State v. Ness*, 707 N.W.2d 676, 685-86 (Minn. 2006). If the admission of evidence of other crimes or misconduct is a close call, it should be excluded. *State v. Bolte*, 530 N.W.2d 191, 197 (Minn. 1995). Here, the first three factors are uncontested. We therefore turn to whether the district court abused its discretion by finding that the *Spreigl* evidence is relevant and material to rebut Treadwell's assertions of self-defense or fabrication.

**Markedly Similar**

If used to demonstrate that there is a common scheme or plan, the conduct of the prior act and the charged act "must have a marked similarity in modus operandi to the charged offense." *Ness*, 707 N.W.2d at 688. The closer the relationship between the past offense and the charged offense, "in terms of time, place, or modus operandi, the greater the relevance and probative value of the [*Spreigl* ] evidence." *Id.*

The district court found that the *Spreigl* crime and the charged offense were similar because "both of these events sprang out of what would otherwise be considered uneventful social settings that escalated to the point where Mr. Treadwell . . . brandished a knife under a circumstance that he believed was threatening." The district court found that "the similarities between the offenses are classic 'modus operandi' evidence."

In *State v. Smith*, our supreme court held that the district court did not abuse its discretion by admitting *Spreigl* evidence of a robbery two weeks earlier to show that the defendant intentionally participated in the charged robbery, rather than firing his weapon

6

in self-defense as he claimed. 541 N.W.2d 584, 589 (Minn. 1996). The same reasoning might apply here. But we need not decide, because the state's second basis for admitting the *Spreigl* evidence, to rebut Treadwell's claim of victim fabrication, is stronger. *See State v. Washington*, 693 N.W.2d 195, 203 (Minn. 2005) (stating that "evidence of modus operandi was relevant because [the defendant] claimed that [the alleged victim] had fabricated her claims to retaliate" against the defendant).

Minnesota courts have repeatedly upheld the admission of *Spreigl* evidence on the issue of whether the disputed act occurred. *Wermerskirchen*, 497 N.W.2d at 241. Here, one of the primary disputed factual issues was whether, after an offhand comment by E.W., Treadwell threatened and then chased her with a knife. By offering a prior incident in which Treadwell unexpectedly pulled a knife on a friend in an ordinary social setting, the state sought "to complete the picture of defendant, to put his current conduct in its proper and relevant context, not to paint another picture." *Id*. at 242-43.

Treadwell emphasizes the dissimilarities between the 2001 offense and the charged offense. While the place and modus operandi of the alleged offenses here are not identical, the standard is not "identical" but "markedly similar." *Ness*, 707 N.W.2d at 689. Crimes that are of the "same generic type" are not markedly similar. *State v. Clark*, 738 N.W.2d 316, 346-47 (Minn. 2007) (quotation omitted) (finding that the prior crime was not markedly similar to the charged offense where the crimes were "relatively remote in time" and the two incidents did not show a "distinctive modus operandi"). But "[a]bsolute similarity between the charged offense and the *Spreigl* [crime] is not required." *State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992).

Here, the *Spreigl* crime and the charged offense occurred in the same general area, involved vehicles, and involved Treadwell threatening a friend with a knife under circumstances that escalated quickly from an otherwise uneventful social interaction. In the *Spreigl* crime, after departing from a visit at a friend's home, Treadwell had difficulty starting his truck and getting it to run well. After Treadwell worked on the truck in the friend's driveway for some time, the friend asked Treadwell to leave because his children were trying to sleep. The two got into a physical altercation, and Treadwell stabbed his friend to death on the front steps. Treadwell contended at his murder trial that he had acted in self-defense, but the state introduced evidence that Treadwell had admitted that he had stabbed his friend because, "unlike others, [he] would not 'bow down' and eat 'humble pie.'"

Treadwell also emphasizes the temporal distance between the 2001 murder and the alleged 2013 offense. Minnesota law recognizes that bad acts that are remote in time may still be relevant if, as here, the defendant was convicted of the prior bad act and he spent a significant part of the interim period incarcerated. *Ness*, 707 N.W.2d at 689. When a defendant has been incarcerated, a court may subtract the length of incarceration from the time that has passed since the charged offense. *Clark*, 738 N.W.2d at 346. Because Treadwell was incarcerated for ten years in connection with the 2001 murder, the October 2001 murder is not remote in time from the February 2013 offense. *See id.*

The district court provided a well-reasoned basis for admitting the 2001 offense as *Spreigl* evidence to rebut a claim of fabrication. But to decide whether it was properly

8

admitted, we must address its probative value in light of the potential for unfair prejudice. *Ness*, 707 N.W.2d at 685.

### Probative Value Versus Unfair Prejudice

In balancing the probative value of the *Spreigl* evidence against its potential for unfair prejudice, we must address the state's need for the evidence. *Id.* at 690. The district court ultimately found that E.W.'s trial testimony was "totally credible," that her statements were consistent, and that the evidence generally lined up with her version, in contrast with Treadwell's version, which was inherently not credible. On the disputed issue of whether E.W. fabricated the story, the state's case was therefore strong.

In assessing the potential for unfair prejudice, the fact that Treadwell's trial was to the court and not to a jury is important. *See State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009) ("The distinction between a jury trial and a bench trial is important. The risk of unfair prejudice to [the defendant] is reduced because there is comparatively less risk that the district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion.").

Aside from the lower risk of the district court using the evidence for an improper purpose, we are able to review the written findings made by the district court in support of its guilty verdict. *See* Minn. R. Crim. P. 26.01, subd. 2 (requiring the district court to make written findings in cases tried without a jury). Here, the written findings include no reference to the 2001 offense. Treadwell does not argue that the evidence was insufficient to convict him or that the written findings were deficient. We therefore conclude that the potential for unfair prejudice was low.

9

We are asked to decide whether the district court abused its discretion by admitting *Spreigl* evidence when the state's need was low, but because of procedural reasons the risk of unfair prejudice was also low. In the context of this particular case, we need not determine whether the other-acts evidence was erroneously admitted, because even if it was, there is no reasonable possibility that the evidence significantly affected the verdict. *See Ness*, 707 N.W.2d at 690. Because the potential for unfair prejudice is lower in a court trial, and having reviewed the findings in support of the guilty verdict, we conclude that any error here did not significantly affect the verdict.

## II.

Treadwell argues that the district court abused its discretion by withholding some of E.W.'s mental-health records after an in camera review conducted under the procedure established in *State v. Paradee*, 403 N.W.2d 640 (Minn. 1987). Appellate courts review the limits placed by the district court on the release and use of protected records for an abuse of discretion. *State v. Evans*, 756 N.W.2d 854, 872-73 (Minn. 2008).

"Criminal defendants have a broad right to discovery in order to prepare and present a defense." *State v. Hokanson*, 821 N.W.2d 340, 349 (Minn. 2012) (citing *Paradee*, 403 N.W.2d at 642). But when a defendant requests private records that are protected by legislation such as the Minnesota Government data Practices Act, the district court should conduct an in camera review to determine "what if any of the information in the records might help the defense." *Paradee*, 403 N.W.2d at 642. The district court should balance the privacy rights of the victims or witnesses against the defendant's right to prepare a defense. *Id.*

10

The mental-health records sought here are protected by the Minnesota Government Data Practices Act and other legislation. *See* Minn. Stat. §§ 13.384, subds. 1(b), 3 (medical data are private), .46, subds. 1(d), 7 (mental-health data are private data on individuals) (2012); *see also* Minn. Stat. § 595.02, subd. 1(d), (g), (i) (2012) (providing for physician/patient, therapist/patient, and chemical-dependency counselor/patient privileges).

To be entitled to an in camera review, the defendant must establish a "'plausible showing' that the information sought would be 'both material and favorable to his defense.'" *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15, 107 S. Ct. 989, 1002 n.15 (1987)). The district court found that Treadwell had made a "'plausible showing' that information in the alleged victim's psychological records 'would be both material and favorable to his defense'" because Treadwell had "described specific conduct on the victim's part that might be mental illness symptoms." Given the narrow scope of the district court's in camera review and its conformity to the defense's self-defense theory of the case, we conclude that the district court did not abuse its discretion by granting Treadwell's motion.

After reviewing the records, the district court determined that a subset of these records were "arguably relevant" and released that subset. Treadwell now argues that the district court abused its discretion by failing to disclose the entirety of E.W.'s mental-health records.

When an appellant asserts that the district court abused its discretion by failing to disclose records screened under the procedure established in *Paradee*, we conduct our

own review of the confidential records. *See Hokanson*, 821 N.W.2d at 350. Having reviewed the confidential records at issue here, we conclude that the district court performed a thorough examination, looking for anything indicating that E.W. exhibited blackouts, short-term memory loss, or unprovoked aggression. The withheld records contain no reference to any behaviors that would support Treadwell's argument that E.W. was the initial aggressor. If anything, the district court released more records than required. We therefore conclude that the district court did not abuse its discretion by declining to release additional records.

## III.

Treadwell argues that the district court abused its discretion by denying his motion for a new trial based on newly discovered evidence, namely the posttrial identification and interview of an eyewitness previously known to Treadwell only as "Snoop, my neighbor downstairs."

On motion, a district court may grant a new trial "on the issue of guilt . . . [based on n]ewly discovered material evidence, which with reasonable diligence could not have been found and produced at the trial." Minn. R. Crim. P. 26.04, subd. 1(1). A defendant must establish:

> (1) that the evidence was not known to him or to his counsel at the time of trial, (2) that his failure to learn of it before trial was not due to the lack of diligence, (3) that the evidence is material . . . , and (4) that the evidence will probably produce either an acquittal at a retrial or results more favorable to the petitioner.

12

*State v. Hawes*, 801 N.W.2d 659, 675 (Minn. 2011) (quotation omitted). This test applies to newly available evidence as well. *State v. Warren*, 592 N.W.2d 440, 450 (Minn. 1999). Appellate courts review the denial of a motion for a new trial for an abuse of discretion. *State v. Green*, 747 N.W.2d 912, 917 (Minn. 2008).

The district court denied Treadwell's new-trial motion from the bench, observing that the defense could have taken steps to determine Snoop's identity earlier. The district court also found that even if the purported testimony had been presented at trial, this additional evidence would not have created reasonable doubt or resulted in a different verdict. As the district court noted, its findings focused on what happened within the confines of Treadwell's car, the new evidence shed little light on those events, and the substance of the new evidence was inconsistent in key respects with Treadwell's own testimony.

We conclude that the district court did not abuse its discretion by finding that Treadwell could have identified his "neighbor downstairs" earlier. We further conclude that the district court did not abuse its discretion by finding that the "newly discovered evidence" would not have resulted in a different verdict. The district court acted well within its discretion by denying Treadwell's motion for a new trial based on newly discovered evidence.

**Affirmed.**